Receipt number AUSFCC-11413685

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| **R2C, LLC,** | |
| **Plaintiff,** | **Case No. 26-1174 C** |
| **v.** | **Judge ________________** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**VERIFIED COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

R2C, LLC ("R2C"), hereby submits the following pre-proposal protest to Solicitation No. W15P7T-26-R-A006.

## NATURE OF THE ACTION

1. This protest arises from the Department of the Army, Army Contracting Command – Aberdeen Proving Ground ("ACC-APG"), issuing Solicitation No. W15P7T-26-R-A006 for the Marketplace for the Acquisition of Professional Services ("MAPS"). MAPS is a multiple-award indefinite-delivery, indefinite-quantity ("IDIQ") procurement intended to replace the Army's existing Responsive Strategic Sourcing for Services ("RS3") and Information Technology Enterprise Solutions–3 Services ("ITES-3S") contract vehicles.

2. The nature of the action involves ACC-APG excluding R2C's proposal as late. Specifically, the MAPS Contracting Office sent an email to R2C on June 25, 2026, stating:

> The Government has investigated and confirms that the portal was fully operational and did not experience an outage or technical failure. The "error" referenced in your email is not an error but a system safeguard that is enacted when an individual attempts to submit proposals after the proposal submission end date/time as instructed in Solicitation Section L.1. Interested parties who did not submit following these instructions were not accepted.

(Exhibit 1).

3. It is R2C's contention its proposal is not untimely. Even if it were, the underlying facts fall within the exception found in FAR § 52.215-1(c)(3)(ii)(A)(2). Specifically, R2C's proposal was received at the ACC-APG portal's "Digital Marketplace" *before* the time designated for receipt.

4. Additionally, and in any event, the Army breached its implied promise to give fair and honest consideration to proposals properly received. The breach occurred when the Army rejected R2C's proposal based on a mere minor irregularity identified in an error message generated by the Army's server, Digital Marketplace, stating: "may have invalid name formats." Moreover, it was an abuse of discretion for the Contracting Officer not to have waived the minor irregularity concerning name formats.

5. Finally, in light of the twenty-five GAO protests involving MAPS, the systemic failure exception to the late-is-late rule applies.

## PARTIES

6. R2C is a small business with its principal office located at 200 Clinton Avenue, Suite 400, Huntsville, Alabama 35801.

7. Defendant is the United States of America, acting by and through the U.S. Army Contracting Command, Aberdeen Proving Ground, MD 21005.

## JURISDICTION AND STANDING

8. This Court has jurisdiction over this action pursuant to the Tucker Act, 28 U.S.C. § 1491(b), as amended by the Administrative Dispute Resolution Act.

9. R2C has standing as an interested party. *See* 28 U.S.C. § 1491(b)(1). R2C is an actual offeror with a direct economic interest in this procurement. But for the Government's failure to properly process R2C's timely submitted proposal, R2C's proposal would have had a substantial chance of award based on scoring sheets maintained by the Government.

## STATEMENT OF FACTS

10. According to the System for Award Management ("SAM"):

> Army Contracting Command-Aberdeen Proving Ground (ACC-APG), in support of the Capability Program Executive (CPE) Enterprise Software and Service (ES2) (formerly known as Program Executive Office (PEO) Enterprise), intends to award a Multiple Award (MA) Indefinite Delivery Indefinite Quantity (IDIQ) contract, MAPS. This is the follow-on and combination of the ACC-APG Responsive Strategic Sourcing for Services (RS3) and Product Lead (PL) Digital Market's Information Technology Enterprise Solutions – 3 Services (ITES-3S) IDIQ Contract Vehicles. The objective of the MAPS IDIQ contract

> is to provide Army customers, Portfolio Acquisition Executives (PAE), CPEs, Department of War (DoW) agencies, and other federal agencies with uncommon knowledge-based professional services and support the Army enterprise infrastructure and infostructure goals with information technology (IT) services worldwide (inside the contiguous United States (CONUS) and outside the contiguous United States (OCONUS)), including hostile areas. By combining these vehicles, the Army aims to enhance flexibility, reduce redundancy, and improve cost-efficiency in acquiring uncommon knowledge-based professional services. This integration will also ensure a unified approach in meeting the Army's evolving technology and strategic needs, thus optimizing mission readiness and effectiveness.

(https://sam.gov/workspace/contract/opp/26fa0a26cd0c4cb894627d43fb7f9e8f/view).

11. The MAPS procurement is intended to establish a government-wide professional services contract vehicle supporting a broad range of engineering, information technology, cybersecurity, scientific, logistics, acquisition, program management, and other professional services for the Department of the Army, other Department of Defense organizations, and other authorized federal agencies. The solicitation contemplates the award of numerous IDIQ contracts across multiple business categories.

12. The Army issued the MAPS solicitation in early 2026 and initially established May 1, 2026, as the deadline for submission of proposals. During the proposal preparation period, however, the Army issued numerous solicitation amendments that substantially revised the solicitation, the proposal instructions, the evaluation methodology, the required proposal forms, and the responses to industry

questions. The Army ultimately issued several amendments. Amendment Nine extended the proposal submission deadline to 12:00 PM ET on June 22, 2026.

13. Rather than evaluating lengthy technical narratives describing an offeror's proposed approach to contract performance, the Army's evaluation methodology relied heavily on standardized scoring of qualifying projects and other objective evaluation criteria. The solicitation established detailed point-based scoring mechanisms intended to measure corporate experience, past performance, and other evaluation factors through prescribed forms and documentation submitted by each offeror.

14. Section L stated:

2. The Offeror shall prepare proposal as follows:

| **Document** | **File Name*** | **Notes** |
|---|---|---|
| **Volume I - Cover Letter** | xxxxCOVERDDMMMYYYY.doc or .pdf | Attachment 0001 |
| **Volume II - Screening Questions and Scorecard** | xxxxSCORECARDDDMMMYYYY.doc or .pdf | Attachment 0002 |
| **Volume III - Past Performance** | xxxxDOMAINQP1DDMMMYYYY.doc or .pdf<br>xxxxDOMAINQP2DDMMMYYYY.doc or .pdf<br>xxxxDOMAINQP3DDMMMYYYY.doc or .pdf | Attachment 0003 |

*Offerors shall replace "DDMMYYYY" with date, month and year of submission. Example - "02APR2026"

(Solicitation W15P7T-26-R-A006, Section L.1).

15. The procurement generated substantial industry concern regarding the solicitation's requirements. Approximately twenty-five GAO protests have already been filed.[1] At least one of the protests involved Digital Marketplace malfunctioning as shown in the extract of a published GAO:

> The solicitation established an initial due date for receipt of proposals of May 1. Req. for Dismissal at 3. Solicitation amendment 3 extended the due date to May 8. *Id.* at 4. On May 8, JAAW filed a protest with our Office in which the firm contended, among other things, that the Portal failed to function properly on both May 7 and May 8, preventing JAAW from submitting a proposal, and that the agency failed to provide adequate time for offerors to prepare proposals as multiple required proposal templates were not finalized until just a handful of days before proposals were due. *The JAAW Group LLC*, B-424433.9, June 1, 2026, at 1 (unpublished decision). In response to JAAW's May 8 protest, the Army notified our Office it had taken corrective action by correcting the problems with the Portal and by amending the RFP to extend the due date for receipt of proposals until June 22. *Id.* As a result, we dismissed JAAW's May 8 protest as academic. *Id.* at 2.

*The JAAW Group*, LLC, B-424433.22, July 31, 2026, at p. 6.

16. In submitting its proposal files in the morning of June 22, 2026, R2C included the following among the file names:

- R2CCOVER22062026.pdf
- R2CSCORECARD22062026.pdf
- R2DOMAINQP122062026.pdf

[1] This is evident by a search of the GAO docket using solicitation number W15P7T26RA006. For example, file number B-424433.25 is assigned to Alpha Tech Alliance, LLC. The case is still active. The "25" indicates there were twenty-five protests previously filed.

17. The following is the sequence of emails on June 22, 2026:

A. **11:51 AM ET:** An email from ACC-APG's contract specialist to R2C stated:

> Thank you for your submissions in accordance with Section L.1 Paragraph 12 "Offerors must submit to the Government their passphrase in order for the Government to open and download the files submitted via DoD SAFE. If the passphrase is not submitted, the Offeror's documents cannot be downloaded and therefore will not be evaluated." Please provide your passphrase no later than Monday, June 22, 2026 12:00PM EST.
>
> Molly E. Beale
> Contract Specialist

(Exhibit 2).

B. **11:04 AM CT**: Hopkin responded:

> Good morning, Ms. Beale,
>
> We have been attempting to upload the documents for MAPs in the CHESS portal and cannot get them to submit. Any guidance would be greatly appreciated.
>
> Thank you,
>
> Heather Hopkin
> Business Manager
> R2C, Inc.

(*Id.*).

C. **12:14 PM ET:** Watson emailed Hopkin with a copy to Beale stating:

> Please identify what issued you are experiencing with you upload.
>
> https://chess.army.mil/proposal/default/index
>
> Stacy R. Watson
> Enterprise Solutions Division (ESD) Director PEO Enterprise – CHESS/Digital Market

(Exhibits 3, 6).

D. **11:14 AM CT**: Hopkin promptly responded to Watson's email by stating:

"Good morning, Please see screenshot below:"




The CHESS ERROR! is "blown up" below:




(Exhibits 3, 5).

E. **11:17 AM CT:** Hopkin emailed Watson, Copeland, and Beale stating:

Ms. Watson,
Attached is our proposal we have been trying to submit. As you can see, the naming conventions and sizes of files are correct.
Thank you for your assistance,

**Heather Hopkin**
Business Manager

(Exhibits 4, 6).

F. **12:18 PM ET**: Watson replied:

> The problem with your MAPS submission filename issue is due to the filename date portion being in the wrong format. Please use the 3 letter abbreviation for the Month portion (JUN) of the filename and have the day portion first.

(Exhibit 7).

G. **11:29 AM CT**: Hopkin replied:

> Hi Ms. Watson,
> The CAGE Code is now not accepted in the portal. Any guidance for this issue?
>
> **Heather Hopkin**
> Business Manager

(Exhibits 3, 7).

H. **12:31 PM ET**: Watson replied to Hopkin:

> The problem with your MAPS submission filename issue is due to the filename date portion being in the wrong format. Please use the 3 letter abbreviation for the Month portion (JUN) of the filename and have the day portion first.

(Exhibit 6).

I. **11:46 AM CT**: Hopkin emailed Watson as follows:

> Hi Ms. Watson,
>
> To follow up with the phone call with Mr. Robert Wilson, we have issues with the Cage Code not being recognized upon submission. The error message reads, "CAGE Code must be unique to your organization." R2C Cage code is 6JPU5. Please see screenshot below.




The more relevant section of the screenshot is expanded as follows:




(*Id.*).

18. In an email dated June 23, 2026 at 11:47 AM CT from Hopkin to Watson and Beale, Hopkin stated:

Dear Ms. Watson,
I am following up regarding the issue we encountered while attempting to submit our MAPS proposal through the CHESS portal. As discussed yesterday, the system would not recognize our CAGE Code, preventing us from completing the submission process. We understand that you are aware of the situation, as an email was sent yesterday and we subsequently spoke by phone.
Could you please provide an update on the status of this issue? We would also appreciate any guidance on whether there are any actions required on our end to facilitate resolution and ensure our proposal can be submitted successfully.
Thank you for your assistance. We appreciate your help and look forward to your guidance.
Best regards,
**Heather Hopkin**
Business Manager

(Exhibit 7).

19. In an email dated June 25, 2026, at 9:47 AM CT, the MAPS Contracting Office stated:

> The Government has investigated and confirms that the portal was fully operational and did not experience an outage or technical failure. The "error" referenced in your email is not an error but a system safeguard that is enacted when an individual attempts to submit proposals after the proposal submission end date/time as instructed in Solicitation Section L.1. Interested parties who did not submit following these instructions were not accepted.

(Exhibit 1).

## GROUNDS FOR PROTEST

## COUNT ONE

### The Army's Rejection of R2C's Proposal Was Arbitrary and Capricious Because It Was Based on a Factually Incorrect Reason.

20. R2C realleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

21. The only explanation R2C has received from the Army for the rejection of its proposal is that R2C attempted "to submit proposals after the proposal end date/time as instructed in Section L." (Exhibit 1).

22. R2C did submit its proposal before the end date/time of June 22, 2026, at noon. Although Hopkin emailed the screenshot below at 12:14 PM ET, she had taken the screenshot significantly earlier (and before noon) as she struggled to get Digital Marketplace to accept the proposal. In fact, R2C made multiple attempts to upload the proposal files before noon but those attempts resulted in the proposal files being bounced back.




(Exhibits 3, 5).

23. R2C could not have received an error message from Digital Marketplace stating "Files may have invalid name formats" unless Digital Marketplace received the proposal files submitted by R2C. Stated differently, only after receipt was Digital Marketplace able to analyze the name formats for the proposal files leading to the conclusion of "invalid name formats."

24. The fact R2C received the error messages before noon on June 22, 2026, establishes Digital Marketplace received the proposal files before noon.

25. The explanation given to R2C for the rejection of its proposal that R2C did not submit its proposal until "after the proposal end date/time as instructed in Section L" is factually wrong.

26. "Arbitrary and capricious means the agency . . . offered an explanation for its decision that runs counter to the evidence before the agency[.]" *Harmonia Holdings Group, LLC v. United States*, 167 Fed. Cl. 448, 461 (2023) (quoting *Ala.*

*Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009)) (citation modified).

27. The decision to exclude R2C's proposal from evaluation based on the assertion it was received "after the proposal end date/time" is arbitrary and capricious because the assertion is contrary to the evidence before the agency.

28. R2C was prejudiced by the rejection of its proposal on a factually incorrect basis. The detailed point-based scoring mechanisms intended to measure corporate experience, past performance, and other evaluation factors showed that R2C's proposal was entitled to more points than proposals of other offerors who were selected for award. (*See* R. Wilson Declaration [Exhibit 8]). Hence, R2C's proposal had a substantial chance of award based on scoring sheets maintained by the Government.

## <u>COUNT TWO</u>

### The Army Wrongfully Rejected R2C's Proposal Since the Submittal of the Proposal Met the Criteria in FAR § 52.215-1(c)(3)(ii)(A)(2)

29. R2C realleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

30. FAR § 52.215-1(c)(3)(ii)(A)(2) provides the following exception to the late-is-late rule: "[t]here is acceptable evidence to establish that it was received at

the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers."

31. Acceptable evidence that R2C's proposal was received at the Government installation designated for receipt can be found in the email from the MAPS Contracting Office dated several minutes before proposals were due:

> **Thank you for your submissions in accordance with Section L.1 Paragraph 12** "Offerors must submit to the Government their passphrase in order for the Government to open and download the files submitted via DoD SAFE. If the passphrase is not submitted, the Offeror's documents cannot be downloaded and therefore will not be evaluated." Please provide your passphrase no later than Monday, June 22, 2026 12:00PM EST.
>
> Molly E. Beale
> Contract Specialist

(Exhibit 2) (emphasis added).

32. The only way R2C could have received an error message from Digital Marketplace stating "Files may have invalid name formats" is if Digital Marketplace received the proposal files submitted by R2C. Only after receipt was Digital Marketplace able to analyze the name formats for the proposal files leading to the conclusion of "invalid name formats."

33. R2C's proposal was under the Government's control prior to the time set for receipt of offers.

34. An offeror relinquishes control over a proposal such that it no longer can modify the proposal.[2]

35. The fact R2C's proposal was under the Government's control can be found in the screenshots of Digital Marketplace in Exhibits 3 and 6.

36. Digital Marketplace is a U.S. Government Information System:




(https://chess.army.mil/Account/Logon?returnUrl=https%3A%2F%2Fchess.army.mil%2Fproposal%2Fdefault%2Findex).

37. Because the Government had R2C's proposal before the time set for receipt of proposals, the integrity of the procurement system was protected since R2C could not modify its proposal.

[2] "Consistent with the purpose of the late proposal rule, the Court concludes that a proposal is under the government's control when the offeror relinquishes control over the proposal such that it no longer can modify the proposal." *Elec. On-Ramp, Inc. v. United States*, 104 Fed. Cl. 151, 163 (2012).

38. The Army wrongfully rejected R2C's proposal since the submittal of the proposal met the criteria for an exception to the late-is-late rule in FAR § 52.215-1(c)(3)(ii)(A)(2).

39. The wrongful rejection of R2C's proposal was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

40. R2C was prejudiced by the rejection of its proposal because the detailed point-based scoring mechanisms intended to measure corporate experience, past performance, and other evaluation factors showed that R2C's proposal was entitled to more points than proposals of other offerors who were selected for award. (*See* Wilson Decl.). Hence, R2C's proposal had a substantial chance of award based on scoring sheets maintained by the Government.

## COUNT THREE[3]

### The Army Wrongfully Applied the Late-Is-Late Rule Because the Systemic Failure Exception Applies.

41. R2C realleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

42. In excluding R2C's proposal from the competition, the Army applied the late-is-late rule.

43. The Army wrongfully applied the late-is-late rule because the systemic failure exception applies. The Court has explained the systemic failure exception as follows:

> This court has explained that the systemic failure exception stems from the agency's obligation to have procedures in place to reasonably safeguard proposals or quotations actually received and to give them fair consideration. The exception generally applies where the loss was not an isolated act of negligence, but was the result of a systemic failure resulting in multiple or repetitive instances of lost information.

[3] In the alternative to Count III, R2C asserts the common law exception to the late-is-late rule is applicable. Citing *Elec. On-Ramp, Inc. v. United States,* 104 Fed. Cl. 151 (2012), the Court of Federal Claims explained the common law exception to the late-is-late rule as follows: "This 'common law' exception provides a 'late proposal may be considered if "government misdirection or mishandling" was the "paramount cause" of the delay and consideration of the proposal would not compromise the competitive process.'" *Global Military Mktg., Inc. v. United States*, 118 Fed. Cl. 624, 631 (2014) (quoting *Elec. On-Ramp, Inc.*, 104 Fed. Cl. at 162). Applying the common law exception, Digital Marketplace misdirected R2C's proposal by bouncing it back to R2C. Hence, the paramount cause of the delay resulting in the proposal being late was the misdirection by Digital Marketplace.

*KGL Food Services WLL v. United States*, 153 Fed. Cl. 497, 508 (2021) (citation modified).

44. R2C's problem with Digital Marketplace bouncing back proposal files was not an isolated act.

45. Based on the limited facts in *The JAAW Group, LLC*, B-424433.22, July 31, 2026, JAAW likewise had its proposal files bounced back by Digital Marketplace based on confusion over file-name conventions:

> This time, the failure arose because the file-naming conventions expressly mandated by the written solicitation (RFP Section L.1, Paragraph 2, and Appendix A--Portal Instructions for Submission of MAPS Proposals) directly conflicted with the naming conventions the portal's own upload interface would actually accept, and because the portal's on-screen prompts were internally inconsistent as to the required naming format. An offeror who followed the written solicitation's instructions produced a proposal the portal rejected; an offeror who followed the portal's prompts produced a proposal that did not conform to the solicitation's written terms. No offeror could comply with both. As a direct result, Protester was again unable to submit a complete, compliant proposal package by the extended June 22, 2026 deadline.

*Id*. at p. 6.

46. *The JAAW Group, LLC* also reveals that the Army was forced to take corrective action as a result of systemic failures with Digital Marketplace:

> On May 8, JAAW filed a protest with our Office in which the firm contended, among other things, that the Portal failed to function properly on both May 7 and May 8, preventing JAAW from submitting a proposal, and that the agency failed to provide adequate time for offerors to prepare proposals as multiple required proposal templates were not finalized until just a handful of days before proposals were due. The JAAW Group

> LLC, B-424433.9, June 1, 2026, at 1 (unpublished decision). In response to JAAW's May 8 protest, the Army notified our Office it had taken corrective action by correcting the problems with the Portal and by amending the RFP to extend the due date for receipt of proposals until June 22.

*Id.* at p. 5.

47. As shown in the GAO citation *The JAAW Group, LLC*, B-424433.**<u>22</u>**, July 31, 2026, the number 22 denotes that the JAAW Group protest was the twenty-second protest on MAPS filed at the GAO.

48. The GAO docket, when searched using solicitation number W15P7T-26-R-A006, reveals a twenty-fifth protest that is still pending:

**Alpha Tech Alliance, L.L.C. (W15P7T26RA006)**

| Solicitation Number: | Agency: | File Number: |
|---|---|---|
| W15P7T26RA006 | Department of the Army : Army Contracting Command--Aberdeen Proving Ground | B-424433.25 |

Status:

Case Currently Open

49. Based on the R2C and JAAW experiences with Digital Marketplace (to include a protest in which the Army was forced to take corrective action), a reasonable inference can be made that a plurality of the twenty-five protests involved systemic failures of Digital Marketplace.

50. Because of Digital Marketplace's systemic failures, the Army did not reasonably safeguard proposals actually received. Furthermore, the Army failed to give the proposals fair consideration.

51. R2C's proposal was entitled to the protection of the systemic failure exception to the late-is-late rule.

52. Because the Army refused to evaluate R2C's proposal even though it was entitled to the protection of the systemic failure exception to the late-is-late rule, the exclusion of R2C's proposal from consideration was arbitrary, capricious, and an abuse of discretion.

53. R2C was prejudiced by the rejection of its proposal because the detailed point-based scoring mechanisms intended to measure corporate experience, past performance, and other evaluation factors showed that R2C's proposal was entitled to more points than proposals of other offerors who were selected for award. (*See* Wilson Decl.). Hence, R2C's proposal had a substantial chance of award based on scoring sheets maintained by the Government.

## COUNT FOUR

### The Army Breached Its Implied Promise to Give Fair and Honest Consideration to Properly Received Proposals When the Army Rejected R2C's Proposal Based on a Minor Irregularity.

54. R2C realleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

55. By issuing a solicitation, agencies make an implied promise to give fair and honest consideration to properly received proposals.[4]

56. R2C submitted a properly received proposal.

57. By significantly incurring considerable bid and proposal costs to prepare its proposal, R2C has paid ample consideration for the implied promise from the Army to fairly and honestly evaluate its proposal.

58. The implicit promise includes not refusing to evaluate R2C's proposal based on a minor irregularity.

59. The reason why the Army refused to evaluate R2C's proposal was because the proposal files identified the month as "06" whereas Digital Marketplace would only allow files to proceed if the month in the file name was identified as "JUN."

---

[4] *See Morgan Bus. Assocs., Inc. v. United States*, 619 F.2d 892, 895 (Ct. Cl. 1980) ("[W]hen the Government issues an advertisement for bids it creates an implied promise to give fair and honest consideration to the bids submitted in response. At the minimum, this is a promise that a bid will be considered if properly submitted. Similarly, we have said that every bidder has the right to have his bid honestly considered by the Government." (citations modified)).

60. "A minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders." FAR § 14.405.

61. The distinction in the file name for the month of June as "JUN" or "06" is a minor irregularity because:

A. A waiver would not be "prejudicial to the other bidders." FAR § 14.405.

B. "The effect on price, quantity, quality, or delivery is negligible." FAR § 14.405.

62. The Government breached its implied promise to give fair and honest consideration to R2C's proposal by rejecting R2C's proposal based on a minor irregularity.

63. R2C was prejudiced by breach of the implied promise resulting in the rejection of its proposal. The detailed point-based scoring mechanisms intended to measure corporate experience, past performance, and other evaluation factors showed that R2C's proposal was entitled to more points than proposals of other offerors who were selected for award. (*See* Wilson Decl.). Hence, R2C's proposal had a substantial chance of award based on scoring sheets maintained by the Government.

## COUNT FIVE

### The Contracting Officer Abused His or Her Discretion By Not Waiving the Minor Irregularity in the Naming of the Files.

64. R2C realleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

65. The solicitation contained FAR § 52.212-1.

66. FAR § 52.212-1(g) states the Government may "waive informalities and minor irregularities in offers received."

67. The Contracting Officer abused his or her discretion by not waiving the minor irregularity in the file names. [5]

68. "Agency action is arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem[.]'" *Applied Business Management Solutions, Inc., LLC v. United States*, 117 Fed. Cl. 589, 605 (2014) (quoting *Ala. Aircraft Indus.* 586 F.3d 1372, 1375 (Fed. Cir. 2009)).

69. The Contracting Officer entirely failed to consider an important aspect of the problem—whether the Contracting Officer should grant a waiver to the minor irregularity under FAR § 52.212-1(g).

70. One of the factors the U.S. Court of Appeals for the Federal Circuit has

[5] In *Electronic On-Ramp, Inc. v. United States*, the Court addressed a proposal that the contracting officer had rejected as untimely and held:

articulated for determining if an agency's actions were arbitrary, capricious, or an abuse of its discretion is "the amount of discretion entrusted to the procurement officials by applicable statutes and regulations." *Croman Corp. v. United States*, 724 F.3d 1357, 1365 (Fed. Cir. 2013).

A. Because R2C was a small business for the MAPS acquisition, the amount of discretion entrusted to the Contracting Officer was significantly constrained by 15 U.S.C. § 631(a) which states: "It is the declared policy of the Congress that the Government should aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns[.]"

B. The amount of discretion afforded the Contracting Officer to exclude R2C's proposal from the competition based on

---

> The record shows that EOR gained no advantage by the late delivery of its paper proposal. This was not a case where EOR did not allow sufficient time to make the delivery or where EOR was trying to make last minute changes to its paper proposal. Therefore, the Court finds that EOR gained no advantage from the late delivery of the paper proposal and other offerors would not be prejudiced by the consideration of EOR's proposal. Consequently, the late submission of the paper proposal is a waivable minor informality. The Court finds that consideration of EOR's proposal would further the competitive process and that there is no basis for concluding that consideration of EOR's proposal would be unfair to other offerors.

*Elec. On-Ramp, Inc. v. United States*, 104 Fed. Cl. 151, 168 (2012). Significantly, the Court sustained the protest based, in part, on the late submission being a waivable informality. The Court gave no apparent deference that the contracting officer might have been entitled to discretion as to the exercise of the waiver.

a minor irregularity was significantly constrained by the Competition in Contracting Act and FAR § 6.101 which emphasizes that "contracting officers shall promote and provide for full and open competition in soliciting offers and awarding Government contracts."

C. Because the predecessor contracts "represented over $27.2M in total revenue" for R2C (*see* Wilson Decl.), it was grossly unfair to deprive R2C of an opportunity to compete on MAPS based on a minor irregularity. Hence, the Contracting Officer's discretion is limited by the FAR Guiding Principle to conduct business with fairness. *See* FAR § 1.102(b)(3).

D. Because the Contracting Officer had a duty to "use sound business judgment" under FAR § 1.102-2(c)(3) and because not granting a FAR § 52.212-1(g) waiver placed the Government in material breach as to its implied promise to give fair and honest consideration to properly received proposals, the Contracting Officer had essentially no discretion but to grant the waiver.

71. R2C was prejudiced by the failure to waive the minor irregularity. The detailed point-based scoring mechanisms intended to measure corporate experience, past performance, and other evaluation factors showed that R2C's proposal was entitled to more points than proposals of other offerors who were selected for award. (*See* Wilson Decl.). Hence, R2C's proposal had a substantial chance of award based on scoring sheets maintained by the Government.

## <u>COUNT SIX</u>

### The Contracting Officer Violated His or Her Regulatory Duty to Conduct Business with Fairness By Using a Minor Irregularity in File Names to Prevent R2C From Competing for Work to Which R2C Is an Incumbent.

72. R2C realleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

73. A Guiding Principle of the FAR is that contracting officers have a duty to conduct business with fairness. FAR § 1.102(b)(3).

74. "FAR 1.102(b)(3) and 1.102-2(c) are phrased in mandatory terms, giving rise to mandatory duties that constrain the government's discretion in dealing with bidders." *FFTF Restoration Co., LLC v. United States*, 86 Fed. Cl. 226, 239 (2009).

75. Because the predecessor contracts to MAPS "represented over $27.2M in total revenue" for R2C (*see* Wilson Decl.), it was grossly unfair to deprive R2C

of an opportunity to compete on MAPS based on a minor irregularity.

76. The unfairness of depriving R2C of the opportunity to compete for MAPS work that is explained, in part, in paragraph 3 of the Wilson Declaration located in Exhibit 8:

> 3. If R2C is no longer able to replace the work it previously performed under these contract vehicles, R2C may have to lay off employees, including some who have worked at R2C for a long time. Not only would it be disruptive to the lives of these employees but also it would hurt R2C who has invested heavily in acquiring and training employees who have accumulated critical knowledge and skills.

77. The failure of the Contracting Officer to waive the minor irregularity of the proposal file names resulted in gross unfairness to R2C.

78. The gross unfairness is a breach of FAR § 1.102 which is a basis for protest. *See FFTF Restoration Co., LLC v. United States,* 86 Fed. Cl. at 239.

79. R2C was prejudiced by the violation of FAR § 1.102(b)(3). The detailed scoring mechanisms intended to measure corporate experience, past performance, and other evaluation factors showed that R2C's proposal was entitled to more points than proposals of other offerors who were selected for award. (*See* Wilson Decl.). Hence, R2C's proposal had a substantial chance of award based on scoring sheets maintained by the Government.

## PRAYER FOR RELIEF

**ACCORDINGLY**, R2C requests that this Court make the following findings and enter judgment in favor of R2C:

A. The Army's rejection of R2C's proposal was arbitrary and capricious because it was based on a factually incorrect reason.

B. The Army wrongfully rejected R2C's proposal since the submittal of the proposal met the criteria in FAR § 52.215-1(c)(3)(ii)(A)(2).

C. The Army wrongfully applied the late-is-late rule because the systemic failure exception applies.

D. The Army breached its implied promise to give fair and honest consideration to R2C's properly received proposal when the Army rejected R2C's proposal based on a minor irregularity.

E. The Contracting Officer abused his or her discretion by not waiving the minor irregularity in the naming of the proposal files.

F. The Contracting Officer violated his or her regulatory duty to conduct business with fairness by using a minor irregularity in file names to prevent R2C from competing for work to which R2C is the incumbent.

G. Award R2C such other and further relief as the Court may deem just and proper, including, without limitation, bid and proposal costs.

Respectfully submitted this 14th day of August, 2026.

*S/Allen L. Anderson*
Allen L. Anderson
**F&B LAW FIRM, P.C.**
213 Greene Street NE
Huntsville, Alabama 35801
Telephone: (256) 536-0095
Facsimile: (256) 536-4440
E-mail: court@fb-pc.com

***Attorney for Plaintiff R2C, LLC***

**OF COUNSEL:**

Patrick E. Sebesta II
**F&B LAW FIRM, P.C.**
213 Greene Street NE
Huntsville, Alabama 35801
Telephone: (256) 536-0095
Facsimile: (256) 536-4440
E-mail: court@fb-pc.com

Jerome S. Gabig
**GOVERNMENT PROCUREMENT LAWYER, LLC**
931 Reserve Drive
Guntersville, Alabama 35976
Telephone: (256) 509-0279
E-mail: jerry.gabig@governmentprocurementlawyer.com

## VERIFICATION

Robert Wilson
President/CEO

**STATE OF ALABAMA )**
**COUNTY OF MADISON )**

**BEFORE ME**, a Notary Public in and for Madison County, Alabama, personally appeared Robert Wilson, whose name as President/CEO of R2C, LLC, is signed to the foregoing, and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing Complaint states the contents are true and correct to the best of his knowledge and belief.

**SWORN TO AND SUBSCRIBED** before me on this the 13th day of August, 2026.

RAELYNN HOFFMAN NOTARY PUBLIC ALABAMA STATE AT LARGE

NOTARY PUBLIC
Comm. Exp. 10·17·2028

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Complaint for Declaratory and Injunctive Relief was filed via CM/ECF with the Court on August 14, 2026

*S/Allen L. Anderson*
Allen L. Anderson